# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VALAAUINA SILULU and NATALIE SILULU, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>TRUSTEES OF BOSTON UNIVERSITY,<br><br>        Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Valaauina Silulu and Natalie Silulu ("Plaintiffs"), individually and on behalf of all others similarly situated (collectively, the "Class" as defined below), bring this class action complaint against the Trustees of Boston University ("Defendant").

## NATURE OF THE ACTION

1.      This is a class action brought to compensate similarly situated Boston University ("BU") students and/or their parents or guardians who paid tuition and fees for the Spring 2020 academic semester and who (i) did not receive their bargained-for educational and other services and (ii) have not been refunded a prorated portion of their tuition and fees after BU ceased providing such services to students during the Spring 2020 academic semester due to Coronavirus Disease 2019 ("COVID-19").

2.      Specifically, as a result of Defendant's wrongful acts and unfair business practices alleged herein, Plaintiffs and the proposed Class (i) have not received any refund or reimbursement for the unused services for which they paid; and/or (ii) did not receive any refund or reimbursement for the decreased value of the education they received from BU when their classes transitioned from in-person instruction at the BU campus facilities to an entirely remote, online learning format.

3.      Based in Massachusetts, BU is the fourth-largest private university in the country. BU currently enrolls more than 17,000 undergraduate and approximately 16,000 graduate students, and, altogether, serves a total of more than 35,000 students.

4.      As of June 2019, BU had a $2.3 billion endowment, and was recently recognized as one of the 50 richest universities in the country.[1] In 2019, BU reported having more than $7

---

[1] https://thebestschools.org/features/richest-universities-endowments-generosity-research/ (last visited May 6, 2020).

billion in assets.[2]

5.      A sizable portion of BU's assets comes from the tuition and fees that its students

pay. In 2019, BU collected $1.164 billion in net student tuition and fees.

6.      For the 2020-2021 academic year, the estimated annual BU undergraduate tuition

will be $56,854, exclusive of fees.  For graduate students, the tuition costs vary. For example,

tuition for BU's Master's in Social Work is $36,190 per year and tuition for BU's fulltime MBA

program is $56,584, also exclusive of fees.

7.      In response to COVID-19, on or around March 11, 2020, BU announced that,

following the March 7-15 spring break, BU would cease all in-person classes between March 16,

2020 and April 13, 2020.  Instead, BU would attempt to provide instruction electronically via

online classes until at least April 13.  That date was subsequently extended through the end of the

academic year.

8.      In a March 11, 2020 email, BU President Robert Brown and Provost and Chief

Academic Officer Jean Morrison acknowledged the problems with moving all in-person classes

to remote learning:

> Discontinuing in-person instruction is a difficult decision, as it interrupts an
> essential element of our learning community, the interactions that occur in our
> classrooms, laboratories, and studios.

9.      Approximately one week later, on March 17, BU President Robert Brown wrote

to announce that all classes for the remainder of the Spring 2020 semester would be moved

online and that students who had returned to campus after spring break should "leave Boston

University residences and return home by Sunday, March 22, or sooner if possible." Brown

acknowledged that "*online delivery is not a substitute for living and learning in our academic*

---

[2] https://www.bu.edu/cfo/files/2019/09/Boston-University-Audited-Financial-Statements-6-30-19.pdf (last visited May 6, 2020).

*community*." (emphasis added). "[W]e have held open the hope that we might be able to safely return to in-person instruction in the second half of April. This hope now seems to be unrealistic." Regarding the shift to online learning, Brown stated, "[o]ur hope is that our virtual technology will allow us to stay connected as we study and interact remotely, but *I know it will not be the same*." (emphasis added).

10.     Despite these admissions that online classes are no substitute for in-person, on-campus instruction, on April 3, 2020, BU Provost Jean Morrison announced that "[s]ince classes are continuing for the remainder of the semester via remote instruction, there will be no credits to student accounts related to spring 2020 tuition charges."

11.     Further, in that same April 3, 2020 correspondence, Morrison announced that there "will be no adjustments or account credits for mandatory fees." The referenced fees include the Community Service Fee, collected to pay for student organizations, programs, and service, and the Student Services Fee and the Health & Wellness Fee, collected to support student health services, wellness activities, student support services, and technology resources. In addition to these fees, which were charged and paid each semester, Defendant also charged BU students a $130 Sports Pass annual fee in Fall 2019, which granted students admission to all home events for ice hockey, basketball, lacrosse and soccer. Despite Defendant's refusal to issue refunds for these mandatory fees, all of the services and experiences that these fees financed were curtailed when Defendant closed down campus, canceled events, and sent students home for the remainder of the Spring 2020 semester.

12.     In response to BU's refusal to issue adequate refunds to students whose education and services have been interrupted by the school's closure and move to online instruction, over

2,150 people have signed an online petition at www.change.org.[3] Specifically, the organizing students explain that they and their peers "accept the high cost of attendance to make use of [BU's] world-class facilities and receive [BU's] uniquely-prestigious and comprehensive educational experience in the heart of Boston," but that this access has been "diminished by the move to an online format." Accordingly, the students believe that they "should be partially refunded for tuition in a way which accurately represents the changes made to the student experience in response to the COVID-19 pandemic." They also request reimbursements for fees and room and board.

13.    Further compounding students' frustration is the fact that BU is eligible for *$15 million* in government funding through the Coronavirus Aid, Relief, and Economic Security Act (CARES) Act, half of which is federally mandated to go toward students who are in need of emergency financial assistance.[4]

14.    Despite receiving this influx of federal funds, Defendant refuses to refund or reimburse Plaintiffs and similarly situated BU students and their parents or guardians the fees they paid for services they are not being provided, events they cannot attend, and programs and activities that have been curtailed, discontinued, or closed.

15.    Defendant also refuses to refund or reimburse Plaintiffs and the Class for tuition paid for online classes that Defendant is currently providing to them that are substantially less valuable than the in-person classes that Defendant had advertised and promised.

16.    Plaintiff and other Class members have lost the benefits of the education, services,

---

[3] https://www.change.org/p/boston-university-organize-for-student-sided-partial-tuition-refunds-at-boston-university-the-50-33-plan (last visited May 6, 2020).
[4] http://www.bu.edu/articles/2020/bu-explainer-on-who-cares-act-dollars-will-benefit/ (last visited May 6, 2020).

and other experiences that Defendant promised.  Despite failing to fulfill its obligations, Defendant is currently unlawfully retaining and refusing to fully or partially refund Plaintiffs' Spring 2020 semester tuition and fees, despite the dramatically lower quality and less valuable education and services now being provided.

17.     Essentially, students have paid Defendant for high-quality, in-person instruction that is no longer available to them, access to buildings they can no longer enter, technology, programs and services that Defendant is no longer providing, and activities that are no longer available.  Defendant is thus profiting from COVID-19 while further burdening students and their families—many of whom have been laid off, become ill, lost loved ones, or are otherwise already bearing the brunt of the COVID-19 pandemic.  The result is an enormous windfall to Defendant.  Both contract and equity demand that Defendant disgorge its ill-gotten funds.

18.     Plaintiffs and similarly situated BU students and their parents or guardians are entitled to have Defendant disgorge fees they paid for unused services and to refund their tuition for substandard classes.  Plaintiffs bring this class action for injunctive, declaratory, and equitable relief, and any other available remedies, resulting from Defendant's illegal, inequitable, and unfair retention of the funds paid by Plaintiffs and the other students and their parents or guardians in the proposed Class.

19.     Specifically, this lawsuit seeks disgorgement and monetary damages in the amount of prorated, unused amounts of tuition and fees that Plaintiffs and the other Class members paid, the benefits of which will not be provided by Defendant. This includes the difference in value between the live in-person classes for which Spring 2020 semester students enrolled and paid, compared to the lesser online versions of classes that Defendant has been providing to them since mid-March 2020.

**PARTIES**

    **A.**    **Plaintiffs**

    20.    Plaintiff Natalie Silulu is a resident of Boxborough, Massachusetts. She is an undergraduate student currently in her second year at BU and is expected to receive her bachelor's degree in May 2022.

    21.    Plaintiff Valaauina Silulu is a resident of Boxborough, Massachusetts. He is Plaintiff Natalie Silulu's father and will be responsible for repaying Natalie Silulu's loans that she used to pay a portion of her tuition and fees.

    **B.**    **Defendants**

    22.    Defendant Trustees of Boston University, located in Boston, was incorporated by an act of the Legislature of the Commonwealth of Massachusetts for the establishment and oversight of Boston University. Defendant's Board of Trustees is the governing body of BU, providing oversight of and having fiduciary responsibility for BU's academic, financial, and business affairs. Defendant thus provides Plaintiff Natalie Silulu and members of the Class with campus facilities, in-person classes, as well as a variety of other facilities, services, and programs at BU and for which Defendant charged Plaintiffs and members of the Class.

**JURISDICTION AND VENUE**

    23.    This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interests and costs, and because at least one member of the Class defined below is a citizen of a state other than Massachusetts.

    24.    This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this judicial District.

25.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2),
because Defendant resides in this District and a substantial part of the acts or omissions giving
rise to this Complaint occurred in this District.

**FACTUAL ALLEGATIONS**

26.     BU is one of the nation's most prestigious universities, offering more than 300
programs of study across ten undergraduate schools and colleges and 400 graduate and
professional programs through 17 schools and colleges.

27.     In the 2020 edition of U.S. News & World Report's Best Colleges, BU was
ranked as the fortieth "Best National University."  It also tied for the seventy-sixth spot in the
same rankings for best undergraduate teaching.

28.     BU is also among the nation's most expensive private secondary educations, and
estimates that for the 2020-2021 academic year, the total cost of undergraduate attendance is
$77,662.00, an amount which exceeds the median household income in the United States.
Defendant markets BU and justifies its high costs by touting the vitality of its "world-class, well-
rounded" educational experience.

29.     First and foremost, BU markets its hands-on approach to teaching and represents
that a BU education provides "unparalleled opportunities." For example, the BU College of Arts
and Sciences (CAS), the university's largest college, advertises that students will be able to
"[s]tudy with world-class research faculty at the heart of the BU academic experience."
Specifically, the CAS boasts the opportunity for one-on-one academic counseling and to
participate in "hands-on research, even as early as freshman year." Meanwhile, the BU College
of Engineering markets that its students can "participate in cutting-edge research" and even hold
paid positions in faculty labs. Additionally, in BU's "state-of-the-art Engineering Product

Innovation Center or Imagineering Laboratory, [students] can develop innovative products using computer-aided design tools and cutting-edge 3-D printers."

30.     Moreover, Defendant markets its "unique, diverse community," varied extra-curricular activities, and robust student services. For example, BU is home to more than 450 student groups and advertises that, to enhance their academic experience, students "can turn to an enormous network of support services—cultural, personal and pre-professional."

31.     Because of the high-quality, hands-on, and proven academic opportunities that it advertises, and on-campus experiences and services it guarantees, Defendant has charged substantial tuition and fees for a BU education.

32.     For example, for the Spring 2020 semester, Plaintiff was charged $27,360.00 in tuition, as well as a $60.00 Community Service Fee, $307.00 Student Services Fee, and a $219.00 Health & Wellness Fee. Additionally, at the beginning of the 2019-2020 academic year, Plaintiff was charged an annual Sports Pass Fee of $130.00, granting her admission to many home sporting events.

33.     Despite receiving several scholarships and grants, Plaintiff Natalie Silulu had to take out loans to pay for her tuition, room and board, and fees for the Spring 2020 semester, and her father pays and has agreed to pay for many of these costs and fees as well as other out-of-pocket costs and fees for attendance.

34.     Plaintiff has not attended any in-person classes since Spring break began on March 7, 2020.  Instead, since classes resumed on March 16, 2020, all of her classes have been administered online.

35.     Plaintiff has neither received nor been offered any refund or reimbursement for the in-person tuition or fees that she paid for the Spring 2020 semester at BU.

36.     As a result of the closure of BU, Defendant has not delivered the educational services, facilities, programs, and opportunities for which Plaintiffs and the Class contracted and paid.  Plaintiffs and the proposed Class are therefore entitled to a full refund of the portion of the fees and tuition for the latter half of the Spring 2020 semester that Defendant did not provide, or which it provided in a severely diminished manner.

37.     The remote, online learning "classes" offered to Spring 2020 students since March deprive students of in-person learning from their peers and school faculty.  The move to these remote classes also deprives students of access to the facilities, materials, and opportunities only offered on BU's physical (as opposed to virtual) campus, including laboratory and research experience, use of on campus facilities (*e.g.*, the gym and libraries), and use of on campus services and events (*e.g.*, attending sporting events, end-of-year programs and events, and various student services)..

38.     The online classes Plaintiff Natalie Silulu and her peers have been provided are not equivalent to and are worse than, the in-person, campus experience that Plaintiff and other BU students chose for their university education.  The tuition and fees that Defendant charged were predicated on access to and constant interaction with and feedback from peers, mentors, professors, and guest lecturers; access to technology, libraries, and laboratories; opportunities to attend or participate in spectator sports and athletic programs; access to student government and health services; and participation in extracurricular groups and learning, among other things.

39.     The online classes offered to Plaintiff and her peers are also of substantially lower quality and are objectively worth less than the in-person courses for which they enrolled and paid.

40.     Prior to the Spring 2020 semester, Defendant did not offer a full-time online

undergraduate option.[5] Instead, Defendant administered only an undergraduate degree completion program and limited number of online graduate and certificate programs online. These virtual programs were designed, from their inception, to be taught and delivered online. Specifically, they were "designed via a unique collaboration between Boston University's Distance Education office"—which "consists of a team of instructional designers, media producers, and support staff who specialize in online education"—and faculty members across BU.[6] By offering such limited courses and programs online, and ensuring that those offerings were crafted by those with expertise in online education, Defendant acknowledged that virtual education is a unique format and, moreover, that Defendant was not prepared to deliver the hundreds of programs and degrees it offers on-campus in a virtual format.

41.     And yet, since the abrupt shift to online learning for *all* undergraduate and graduate programs, Defendant has forced Plaintiff Natalie Silulu and other in-person students into haphazard courses that were never intended to be taught virtually, and that are now being taught by faculty who may have no experience with—and perhaps not even an interest in—online instruction.

42.     Defendant recognized this fact in a March 9, 2020 communication to BU faculty. "If the University were required to close or otherwise cease all in-person meetings, it is our expectation that faculty will find the best approach to continue offering course content," BU Provost and Chief Academic Officer, Dr. Jean Morrison, wrote. Morrison also recognized that this might be some faculty members' "first experience" with the online teaching technologies like Zoom and Blackboard, and advised that faculty "participate in a training at their earliest

---

[5] https://www.bu.edu/online/programs/ (last visited May 6, 2020).
[6] https://www.bu.edu/online/about-us/ (last visited May 6, 2020).

convenience." In other words, just days before announcing a universal and forced shift to online instruction, Defendant acknowledged that many professors would be embarking on online learning for the very first time, and merely directed them to build the tools and competencies necessary to do so successfully at their "convenience."

43.    The result of this haphazard approach is that Plaintiff and Class members have been provided with a second-rate online substitute for the hands-on, in-person coursework in which they enrolled—and for which they paid. In fact, some BU faculty are reportedly uploading pre-recorded lectures, rather than engaging live with students, thereby denying students of *any* meaningful interaction with their instructors, despite BU's frequent touting of its high-quality teaching.[7]

44.    BU's post-COVID-19 online student offerings do not even come close to comparing with either BU's in-person course experiences or BU's course offerings that, from the outset, have been designed specifically for virtual delivery, by faculty with experience and expertise in online instruction. Instead, Plaintiff and Class members have been forced into overpriced bubble-gum and duct-tape substitutes.

45.    For example, one BU student, Jasmine Gordon, recently shared her experience— and frustration—with online learning: "I think face to face interaction is far more valuable than anything else at BU. I know myself and a few other students who are watching. We're not going to Zoom every day. We aren't talking to our professors every day. We get into the emails and we're watching old, pre-recorded lectures."[8]

46.    In a recent column, another BU student, Bini Ollivier-Yamin, called it

---

[7] https://dailyfreepress.com/2020/04/04/students-to-receive-partial-refunds-for-spring-semester/ (last visited May 6, 2020).
[8] *Id.*

"unreasonable" for BU to "expect[] students to pay tuition in full for classes being held online," and noted that, many online courses—*including those offered at BU*—cost much less than in-person BU class offerings.[9] "Online programs at Boston University charge from $490 to $925 per credit. That's even significantly lower than the around $3,000 per credit being charged for full-time on-campus undergraduate students. We are technically attending Boston University online. It makes sense that our tuition rates should reflect that."[10]

47.     Yet, despite offering students inferior, poorly planned, and poorly executed online courses, Defendant refuses to issue refunds to Plaintiff Natalie Silulu, Gordon, Ollivier-Yamin, and tens of thousands of other students.

48.     Moreover, Defendant has refused to issue refunds for mandatory fees, as well.

49.     In addition to tuition, for the Spring 2020 semester, Plaintiff paid a mandatory $60.00 Community Service Fee, $307.00 Student Services Fee, and a $219.00 Health & Wellness Fee.

50.     BU describes the $60 Community Service Fee as designed to be "allocated directly to support student organizations, programs, and services." These organizations, programs, and services either ceased operation when BU closed its campus or were dramatically curtailed. Instead of refunding a portion of the Community Service Fee, BU has instead opted to refuse refunds of the fee.

51.     BU describes the $219 Health & Wellness Fee as "directly allocated to support student health services and wellness activities across campus" with the "proceeds also help[ing] to offset the cost of student Health Services clinic and the Fitness & Recreation Center and tehri

---

[9] https://dailyfreepress.com/2020/04/14/canceled-boston-university-should-partially-refund-our-tuition-money/(last visited May 6, 2020).
[10] *Id.*

satellite operations." When BU closed its campus, it closed the Fitness & Recreation Center, and in any event, by sending home its student population, it cut them off from receiving any services funded by this fee.

52.     BU describes the $307 Student Services Fee, in conjunction with the Health and Wellness Fee, as being "directly allocated to support student health services, wellness activities, student support services, and technology resources across campus." These services and activities too have been dramatically curtailed since BU shut campus down and sent students home.

53.     In refusing to provide a refund of the Student Services Fee and Health and Wellness Fee, BU acknowledged that the funded services, programs, and activities were curtailed, but nevertheless declined to issue refunds.

54.     Since the campus shut-down Plaintiff Natalie Silulu has not received the benefits of these fees, nor been offered a refund for them.

55.     Through this lawsuit, Plaintiff seeks—for herself and the other Class members— Defendant's disgorgement and/or refund of the prorated, unused portion of her fees, proportionate to the amount of time that remained in the Spring 2020 semester when the campus was shut down and classes moved online, as well as a refund of a percentage of tuition based on students no longer being able to attend classes in-person and instead being offered a sub-par online learning experience.

## CLASS ACTION ALLEGATIONS

56.     Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and/or (c)(4), Plaintiff brings this action on behalf of herself and the following Class:

> All persons who paid Boston University tuition and/or fees for in-person education for the Spring 2020 semester.

57.     A class action is a superior means to ensure the fair and efficient adjudication of

this case.  The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of the claims described herein against the Defendant.  Moreover, individualized actions would run the risk of creating inconsistent or contradictory judgments arising from the same set of facts and would increase the likely delay and expense to all parties involved and the Court itself.  By contrast, by proceeding as a class action, the claims at issue can be adjudicated efficiently through economies of scale.

58.     **Numerosity.**  In accordance with Fed. R. Civ. P. 23(a)(1), the members the proposed Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  Although the precise number of Class members is unknown presently to Plaintiff, the Class is presumed to number more than 40,000 people and is easily ascertainable through enrollment and financial records maintained by Defendants.

59.     **Commonality and Predominance.**  In accordance with Fed. R. Civ. P 23(a)(1) and (b)(3), this action involves questions of law and fact common to the Class that predominate over any individual questions specific to any Class member. These include:

a.   whether Defendant accepted money from the Class;

b.   whether Defendant retained money from the Class for services they did not render, or only partially rendered;

c.   whether Defendant entered into a contract with the Class;

d.   whether Defendant breached its contract with the Class;

e.   whether Defendant benefited from the money it accepted from the Class;

f.   whether the educational and other services Defendant provided to the Class were commensurate with the value;

g.   whether certification of the Class is appropriate under Fed. R. Civ. P. 23;

h.   whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

      i.   the amount and nature of relief to be awarded to Plaintiff and the other Class members.

60.    **Typicality.**  Pursuant to Fed. R. Civ. P. 23(a)(3), Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the other Class members each paid for certain costs associated with the Spring 2020 semester but were not provided the services that those costs were meant to cover.  Each suffered damages in the form of their lost tuition, fees, and other monies paid to Defendant, and the claims all arise from the same BU practices and course of conduct.  There are no defenses available that are unique to the Plaintiffs.

61.    **Adequacy of Representation.**  In accordance with Fed. R. Civ. P 23(a)(4), Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other proposed Class members.  Moreover, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and they intend to prosecute this action vigorously on behalf of her fellow Class members.  Plaintiffs have no interests that are antagonistic to those of the Class and they will fairly and adequately protect the proposed Class' rights along with counsel.

## COUNT I

### Breach of Contract

62.    Plaintiffs repeat and alleges the allegations in Paragraphs 1-56, above, as if fully alleged herein.

63.    Plaintiffs bring this claim individually and on behalf of the other members of the Class.

64.    Plaintiffs and the other members of the Class entered into binding contracts with Defendant, which provided that Plaintiffs and the other members of the Class would pay tuition and fees, to BU, in exchange for on-campus educational, social, and other facilities and

experiences.

65.     As part of their contracts with BU, and, in exchange for adequate consideration that Plaintiffs and members of the proposed Class provided, Defendant promised to provide educational and campus services and a meal plan during the Spring 2020 semester.

66.     Defendant failed to provide the services that it was obligated to perform under its contracts with Plaintiffs and the proposed Class.  Defendant has retained tuition and fees paid by Plaintiffs and the other members of the Class for the full 2020 Spring semester without providing them the promised benefits, instead providing those benefits for only a portion of the 2020 Spring semester.

67.     By contrast, Plaintiffs and the other members of the Class fulfilled their end of the bargain when they paid the monies due and owing for their full tuition, fees, and meal plans for the semester.

68.     The tuition and fees that Plaintiffs and the proposed Class paid were intended to cover in-person educational and extra-curricular services from January through May 2020. Defendant, however, failed to provide the services due under the contracts for that entire time period, yet has improperly retained the funds Plaintiffs and the proposed Class paid for their Spring 2020 tuition, fees, and meal plans without providing them the services and other benefits due under the contracts.

69.     Plaintiff and members of the Class have suffered damages as a direct and proximate result of Defendants' breach, including being deprived of the education, experience, and services that they were promised and expected to obtain, and for which they have paid. They are entitled to damages including but not limited to prorated reimbursement of the tuition, fees, and other expenses that were collected by Defendant for services that Defendant failed to

deliver fully.

70.     Defendant's performance under the contracts is not excused because of COVID-19.  Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services and/or goods that it did not provide.

## COUNT II

### Restitution Based On Quasi-Contract

71.     Plaintiffs repeats and allege the allegations in Paragraphs 1-64, above, as if fully alleged herein.

72.     Plaintiffs bring this claim individually and on behalf of the other members of the Class in the alternative to the breach of contract claim brought in Count I.

73.     Plaintiffs and other members of the proposed Class conferred a benefit or enrichment on Defendant by paying tuition and mandatory fees to Defendant which were beneficial to Defendant, at the expense of Plaintiffs and the other members of the Class.

74.     Plaintiffs and the other members of the Class paid tuition and mandatory fees and did not receive the full benefit of their bargain from Defendant, thus resulting in their impoverishment.

75.     Defendant has retained the benefit paid by Plaintiffs and the Class despite its failure to provide the services for which the benefit was paid.

76.     There is no justification or cause for Defendant's failure to return the portion of the tuition and fees that Defendant has unjustifiably kept for itself even though it failed to complete the services for which Plaintiffs provided the funds to Defendant.

77.     Accordingly, Defendant has been unjustly enriched and should pay as restitution a prorated portion of the funds for the Spring 2020 semester that Plaintiffs and the proposed Class

paid for tuition, required fees, and meal plan fees.

## COUNT III

### Conversion

78.     Plaintiffs repeat and re-allege the allegations in Paragraphs 1-71, above, as if fully alleged herein.

79.     Plaintiffs bring this claim on behalf of themselves and on behalf of the Class.

80.     Plaintiffs and the other members of the Class have a right to the in-person educational and extra-curricular services that they were supposed to be provided in exchange for their payments to Defendant.

81.     Defendant intentionally interfered with the rights of Plaintiffs and the other members of the proposed Class when it retained fees intended to pay for on-campus classes, facilities, activities, and meal plans, while moving all classes to an online, remote learning format and discontinuing services and access to facilities for which Plaintiff and the members of the proposed Class had paid.

82.     Defendant deprived Plaintiffs and the other members of the Class of their fees or of the right to the services for which their fees were intended to be used.

83.     Class members demanded the return of the prorated, unused fees for the remainder of the Spring 2020 semester.

84.     Defendant's retention of the fees paid by Plaintiffs and the other members of the Class without providing the services for which they paid deprived Plaintiffs and the other members of the Class of the benefits for which the fees were paid.  This interference with the services for which Plaintiffs and the other members of the Class paid damaged Plaintiffs and the other members of the Class in that they paid fees for services that were not and will not be

provided.

85.     Plaintiffs and the other members of the Class are entitled to the return of prorated

unused portion of the fees paid, through the end of the Spring 2020 semester

## PRAYER FOR RELIEF

86.     Plaintiffs, on behalf of themselves and on behalf of the members of the Class,

respectfully requests that the Court enter judgment in their favor and against Defendant as

follows:

   a.     Certifying the Class as requested herein, designating Plaintiff as Class
          representative, and appointing the undersigned counsel as Class Counsel;

   b.     Declaring that Defendant is financially responsible for notifying the Class
          members of the pendency of this suit;

   c.     Declaring that Defendant wrongfully kept the monies paid by the Class;

   d.     Awarding injunctive relief and restitution as permitted by law or equity;

   e.     Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

   f.     Awarding pre- and post-judgment interest on any amounts awarded; and

   g.     Awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil

Procedure on all causes of action so triable.

Dated: May 13, 2020                         LICHTEN & LISS-RIORDAN, P.C.


                                            By: */s/ Harold Lichten*_____
                                            Harold L. Lichten (BBO #549689)
                                            LICHTEN & LISS-RIORDAN, P.C.
                                            729 Boylston St, Suite 2000
                                            Boston, MA 02116
                                            (617) 994-5800
                                            hlichten@llrlaw.com


                                            Shanon J. Carson*
                                            Patrick F. Madden*
                                            BERGER MONTAGUE PC
                                            1818 Market Street, Suite 3600
                                            Philadelphia, PA 19103
                                            Tel: (215) 875-3000
                                            Email: scarson@bm.net
                                            Email: pmadden@bm.net

                                            E. Michelle Drake*
                                            BERGER MONTAGUE PC
                                            43 SE Main Street, Suite 505
                                            Minneapolis, MN 5514
                                            Tel: (612) 594-5933
                                            Email: emdrake@bm.net


                                            *pro hac vice* forthcoming

                                            *Attorneys for Plaintiffs and the Class*